WESTERN UNION TELEGRAPH CO. v.
JEFFRIES et al.   (No. 478.)

(Court of Civil Appeals of Texas.   Beaumont.
July 4, 1919.)

1. PLEADING ⬦�441;8(20) — CONCLUSIONS OF PLEADER—BREACH OF CONTRACT.

In action against telegraph company for breach of contract to furnish telegraphic reports of a prize fight, allegations that plaintiffs were damaged in consequence of the failure and refusal of defendant to carry out its contract, without stating facts upon which such claim of damage was based, held mere conclusion of pleader.

2. TELEGRAPHS AND TELEPHONES ⬦�441;65(2) — ACTION FOR BREACH OF CONTRACT—PLEADING.

In action against telegraph company for breach of contract to furnish telegraphic reports of prize fight, allegation that plaintiffs would have received a large sum of money on sale of tickets held insufficient as a statement of any fact or facts showing that plaintiffs were damaged in a legal sense by reason of the breach, and that they were in consequence entitled to special damages.

3. TELEGRAPHS AND TELEPHONES ⬦�441;65(2) — CONTRACT TO DELIVER TELEGRAPHIC REPORTS—ACTION FOR BREACH—PLEADINGS.

In action against telegraph company for failure to deliver telegraphic reports of prize fight in compliance with its contract to so do, petition held to plead cause of action to recover expenses incurred in preparation for exhibition at which reports were to have been read, and for special damages, and not to recover for loss of profits by reason of the breach of contract.

Appeal from District Court, Harris County; K. C. Barkley, Judge.

Action by E. C. Jeffries and others against the Western Union Telegraph Company. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Hume & Hume, of Houston, for appellant.
A. B. Wilson, of Houston, for appellees.

HIGHTOWER, C. J.   The statement of the nature and result of this suit as made in appellant's brief is conceded by appellees to be correct, and is as follows:

Appellees (plaintiffs below) sued appellant (defendant below) for damages in the sum of $2,749.70, as upon breach of contract to furnish on July 4, 1910, a telegraphic report of a prize fight. There was a jury trial in the district court, before a special judge. The case was submitted to the jury upon three special issues, all of which were found in appellees' favor, and judgment was in due time rendered for plaintiffs, for the sum of $1,500.30. Motion for new trial was duly filed and overruled by the court, and its action thereto duly excepted to.

Plaintiffs alleged substantially:

That plaintiffs entered into an oral contract with the defendant under and by virtue of the terms of which defendant undertook and agreed, for a consideration of $25, paid to it by plaintiffs, to furnish plaintiffs, at the opera house, in Amarillo, Tex., where defendant had an office and agent, with the detailed telegraphic reports of the Jeffries-Johnson prize fight to be pulled off at Reno, Nev., July 4, 1910.

That plaintiffs paid defendant, June 11, 1910, said sum of $25.

That defendant and its agent, manager, and representative at Amarillo, Tex., were fully advised by plaintiffs of all their purposes and objects in entering into said contract; that plaintiffs advised defendant of their intention and purpose of leasing the opera house at Amarillo, Tex., advertising that detailed reports of said prize fight would be given at the opera house on the evening of July 4, 1910, for an admission fee to be charged and collected by plaintiffs for permitting and allowing people to enter the opera house and witness the reports as received and given over defendant's wires

⬦�441;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

from the ringside of the fight, and defendant, well knowing the purposes and objects of plaintiffs in entering into said contract, is liable and bound to pay plaintiffs damages by reason of defendant's breach thereof.

That thereafter, plaintiffs having entered into said contract with defendant, in the course of their preparation for receiving the telegraphic reports of said prize fight, paid out the following sums and amounts and incurred the following expenses, to wit:

| | |
|---|---|
| Rent on opera house | $100 00 |
| E. C. Jeffries time, ten days $5.00 per day | 50 00 |
| Sam L. Isacca, ten days, $5.00 per day | 50 00 |
| Printing posters | 6 00 |
| Posting posters | 2 50 |
| Printing tickets and cards | 5 00 |
| Telegraphing with reference to said prize fight | 2 70 |
| | $216 20 |
| Drawing up contract with reference to said prize fight | $ 1 00 |
| Paid defendant for use of its wire service | 25 00 |
| Paid for painting two cloth banners, advertising said prize fight | 7 50 |
| Aggregating | $249 70 |

That said expenses above enumerated and itemized were necessary, proper, and reasonable expenses incurred by plaintiffs in the course of their preparation for receiving the reports of said prize fight, and defendant, its agents and servants and manager were fully advised of the purposes and objects of leasing said wire and service it was to give plaintiffs in making detailed reports of said prize fight, knowing at the time plaintiffs' purpose and intention of advertising that said reports would be given at the opera house at Amarillo on July 4, 1910, and that said expense so made, incurred, and paid would be incurred by plaintiffs.

That after plaintiffs had incurred, expended, and paid the items hereinabove set forth, and on or about the 2d day of July, 1910, defendant notified plaintiffs that the Associated Press objected to defendant giving plaintiffs said reports of said prize fight, and for this reason defendant declined to furnish plaintiffs telegraphic detailed reports of said prize fight, thereby breaching its contract with plaintiffs, to their damage in the sum of $2,500, in addition to the expenses incurred and paid as per the above itemized statement, aggregating in all, $2,749.70.

That the city of Amarillo had a population of about 15,000 inhabitants in July, 1910; that the habit and custom of the people of said city is to observe July Fourth as a holiday, closing up most of the business houses and making it a day of pleasure and recreation; that the people of Amarillo delight in and love all manner of games and sports, and were intensely interested in the Jeffries-Johnson prize fight, and anticipated and expected to attend the opera house July 4, 1910, where a detailed report was to have been given by plaintiffs, under their contract with defendant, from the ringside of the Jeffries prize fight. That there was no other attraction in the town of Amarillo on July 4, 1910, and plaintiffs had reason to believe, and did believe, that there would have been a large attendance, to wit, 2,000 people at the opera house, paying large sums of money for the privilege of attending same, but for defendant's failure and refusal to carry out its contract with plaintiffs, thereby causing plaintiffs to suffer the loss and damages aforesaid.

Premises considered, defendant having been served with citation, plaintiffs prayed that they have judgment against the defendant for the sum of $2,749.70, together with costs of court, and for all general and special relief, as in duty bound plaintiffs will ever pray.

Defendant excepted to plaintiffs' petition, in respect to the allegations relating to damages in addition to the expenses alleged to have been incurred and paid, said exceptions being as follows:

"Specially excepting that plaintiffs' said petition is insufficient in law for this; and especially that portion of said petition wherein damages in the sum of $2,500 are claimed in addition to the items of expense alleged, in that there are no allegations to show any right in plaintiffs to recover in any event an amount in excess of the amount claimed for expenses incurred; and that said claim for $2,500 additional damages is a mere legal conclusion, and surplusage, and too general and indefinite, and additional damages so sought being too remote, conjectural, contingent, speculative, and uncertain, and of this defendant prays judgment."

This special exception was by the court overruled. The judgment, omitting introductory recitals, was as follows:

"The issues of fact were submitted to the jury upon special issues, and, after argument of counsel, they retired to consider of their verdict, and, in answer to the special issues submitted to them, returned their verdict in the following words and figures, to wit:

"Special Issue No. 1: What amount of money, if any, did the plaintiffs pay out in order to stage a telegraphic report of the Jeffries-Johnson prize fight, held at Reno, Nev., July 4, 1910, such telegraphic report to be held at the opera house at Amarillo, July 4, 1910? Answer, stating the amount, if any, as you find the fact to be.

"To special issue No. 1, we answer: We, the jury, find plaintiffs paid out $99.70.

"Special Issue No. 2: What amount, if any, do you find from the preponderance of the evidence that the plaintiffs would have received from the sale of tickets if they had held the telegraphic report of the Jeffries-Johnson prize fight at Amarillo opera house July 4, 1910? Answer, stating the amount, if any, as you find the fact to be.

"To special issue No. 2 we answer: We, the jury, find the plaintiffs would have received seventeen hundred dollars for sale of tickets had the Jeffries prize fight report been pulled off.

"Special Issue No. 3: What additional expense, if any, would the plaintiffs have incurred had they held such telegraphic report of the Jeffries-Johnson prize fight at the opera house at Amarillo on July 4, 1910? Answer, stating the amount, if any, as you find the fact to be.

"To special issue No. 3 we answer: We, the jury, find that the plaintiffs would have expended an additional $100.00 (one hundred dollars) had the Jeffries-Johnson prize fight reports been pulled off.

"S. A. Robbins, Foreman.

"And, it appearing to the court from the verdict of the jury that the plaintiff did and would have expended· the sum of $199.70, which sum should be deducted from the total sum of $1,700, which the jury found plaintiff would have received from the sale of tickets, it is therefore ordered, adjudged, and decreed by the court that the plaintiffs, E. C. Jeffries and Sam L. Isaaca, do have and recover of and from Western Union Telegraph Company, a corporation, the sum of $1,500.30, with interest thereon from the 27th day of February, 1918, at the rate of 6 per cent. per annum, and all costs herein incurred and expended, for which execution may issue."

The first assignment of error challenges the action of the court in overruling defendant's special exception hereinbefore quoted.

By the proposition under this assignment, it is contended that plaintiffs' allegations with reference to the claim for damages in the sum of $2,500 in addition to the items of expense alleged constituted mere surplusage and a mere legal conclusion, and were too general and indefinite, and also that such additional damages so sought were too remote, conjectural, contingent, speculative, and uncertain.

Appellant's proposition, in so far as it is contended that the allegations of plaintiff excepted to constituted a mere legal conclusion, and were too general and indefinite, must be sustained.

[1, 2] The allegations to the effect that plaintiffs were damaged in consequence of the failure and refusal on the part of appellant to carry out its contract with them, without stating the facts upon which such claim of damage was based, must be held to be merely the conclusion of the pleader, as contradistinguished from a statement by the pleader of the facts showing how and to what extent, etc., they were damaged by reason of such breach. The allegation, in substance, is that the plaintiffs would have received a large sum of money for the sale of tickets to persons attending the opera house on the occasion in question had the defendant not canceled its contract with plaintiffs, and that in consequence of appellant's breach plaintiffs were damaged. This is about the extent of the allegations contained in plaintiffs' petition relating to the claim of special damages, in addition to the claim for expenses incurred and paid in preparation for the exhibition. It is· not even alleged as a fact that "this large sum of money" would

have been in excess of $25, which was the consideration paid defendant for the contract, and certainly the allegation does not amount to a ·statement as a fact that the sum of money that would have been taken in by plaintiffs as admission fees would have exceeded the aggregate sum of the expenses paid and incurred, or that would have been paid and incurred by plaintiffs in pulling off this exhibition at the opera house. This may appear inferentially from the allegations, but as against the special exception· directed against the allegation, the same is insufficient as a statement of any fact or facts showing that plaintiffs were damaged in a legal sense by reason of the breach of the contract, and that in consequence of such breach they were entitled to recover the special damages, in addition to their claim of actual expenses paid and incurred, as shown in this suit.

The plaintiffs do not even allege what the admission ought to have been or would have been. We are compelled to sustain the first assignment and the proposition thereunder for these reasons.

We would not be understood as intimating, however, that plaintiffs might not, by proper allegations of fact, recover damages against defendant in consequence of its willful breach of the contract, which seems to be indicated by this record. In other words, we do not intend to hold that a claim for damages by plaintiffs, in addition to the actual expenses paid and incurred by them in preparation for this exhibition, would, as a matter of law, be too remote, conjectural, contingent, or speculative, as is broadly contended by appellant in the latter part of its above-mentioned proposition. Indeed, we are not prepared to say that if the plaintiffs' petition in this case had stated specifically the facts, as the evidence in this record would seem sufficient to sustain, relating to the reasonableness of the expectation on the part of plaintiffs as to the sum of money that would have probably been taken in as admission fees on the occasion in question, it would not have been sufficient to show their right to recover these special damages as sought by them. For instance, as one particular, it is shown by the evidence, substantially, that prior to the breach of the contract by defendant, plaintiffs had sold to persons who contemplated attending this exhibition tickets aggregating the price of approximately $600, and they afterwards refunded or returned this amount of money to the persons from whom it was received. This is only one instance of a fact or circumstance appearing in the record, all of which, taken together, would be sufficient to indicate, with reasonable certainty, the approximate amount of damage that was done plaintiffs by reason of appellant's breach of its contract. We do not mean by this to

intimate that a plaintiff should be required to plead his evidence, but in cases of this character, where special damages are claimed by reason of a breach of contract, sufficient facts, instead of conclusions and inferences, ought to be stated by the pleader from which it might appear that the damages sought were not so remote, speculative, contingent or uncertain in amount that the policy of the law would prevent their being claimed by plaintiffs.

We quote the second assignment of error, as follows:

"The judgment is without basis in the pleadings, in that, and in so far as, it authorizes and fixes damages upon the basis of the difference between what it would have cost plaintiffs had they given the exhibition and the amount that plaintiffs would have received from the sale of tickets, there being no pleadings to warrant the application of said measure of damages."

[3] The assignment is submitted as a proposition. We have shown above that the judgment recovered by the plaintiffs was for the sum of $1,500.30, the same purporting to be based upon the difference between $1,700, the amount which the jury found in plaintiff's favor that they would have received from the sale of tickets, and $199.70, the sum of the amounts which the jury found plaintiffs did expend and would have expended had the report been given. Now, it was alleged, as shown above, that plaintiffs paid out certain amounts and incurred certain expenses, itemizing the same, which aggregated the sum of $249.70; it being further alleged that these items were necessary and reasonable in the course of the preparation for receiving the said wire reports. They then alleged that after they had incurred the items of expense above mentioned, defendant declined to furnish the telegraphic reports, and thereby breached its contract with plaintiffs, damaging them in the sum of $2,500, in addition to the expenses incurred and paid in the necessary preparation for the exhibition, their total damage aggregating $2,749.70. They then prayed for judgment in the aggregate sum of $2,749.70. As we understand the petition, the plaintiffs' suit was not one to recover for the loss of profits by reason of defendant's breach of contract, that is to say, was not a suit to recover the difference between the sum of money they would have taken in as admission fees and the expenses paid and incurred by them in pulling off the exhibition, but they sought to recover both the expenses incurred by them, according to their allegations, which expenses they itemized, and also sought to recover the additional sum of $2,500 as special damages by reason of breach of contract on the part of appellant. This being true, we think that the trial court was not authorized to treat as it did the plaintiffs' suit as being one for damages for loss of profits in consequence of defendant's breach of contract. This is clearly what the court did. It will be readily seen from what we have said that there was no allegation showing what it would have cost the plaintiffs had the wire reports been furnished as agreed by defendants, and since the profits that in any event could have been recovered by them would be measured by the difference between what would have been realized had the contract been carried out and the amount it would have cost them to pull off the exhibition, there was, as contended by appellant, no basis in the pleadings for the award of damages as shown by the judgment. Without going further into detail, we think it clear that the second assignment of error must also be sustained, and enough has been said to indicate that the pleadings, upon another trial, might be so amended as to obviate the question raised by this assignment.

The third assignment of error challenges the judgment, substantially, on the ground that it is not responsive to the pleadings in the case, and is without a basis in the pleadings, except to the extent found by the jury as for the expenses incurred by plaintiffs, that is $99, as shown by their special finding above.

This is practically the same question raised by the second assignment, and for the same reason is sustained. We might perhaps be authorized to affirm the judgment in favor of appellees for the sum of $99, as for actual expenses incurred by them, for to that extent perhaps the pleadings and the evidence would both be sufficient upon which to base such affirmance. But in view of the fact that the case must be again tried, we think best to remand the whole case that it may be tried upon sufficient and proper pleadings, meeting the objections pointed out by the special exceptions interposed by the appellant's answer.

The judgment will therefore be reversed, and the cause remanded; and it is so ordered.